UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER LYNN M.,<br><br>                    Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY, Commissioner of Social Security,[1]<br><br>                    Defendant. | Case No.: 23-cv-1099-DDL<br><br>**ORDER AFFIRMING DECISION OF THE COMMISSIONER**<br><br>[Dkt. No. 10] |

Plaintiff Jennifer Lynn M. challenges the Commissioner's denial of her application for disability benefits pursuant to 42 U.S.C. § 405(g).  Before the Court are Plaintiff's opening brief, the Commissioner's responding brief, and Plaintiff's Reply.  Dkt. Nos. 10, 14, 15.  After carefully considering the parties' arguments, the certified administrative record ("AR") and the applicable law, and for the reasons stated below, the Court concludes that the Commissioner's decision is free of legal error and supported by substantial evidence.  Accordingly, the Commissioner's decision is **AFFIRMED**.

/ / /

---

[1]  Commissioner O'Malley is automatically substituted pursuant to Federal Rule of Civil Procedure 25(d).

# I.

# BACKGROUND

**A.  Plaintiff's Application for Disability Benefits**

Plaintiff is a 50-year-old female who alleges disability beginning on June 1, 2020, due to her medical conditions, including but not limited to diabetic neuropathy, arthritis, back injury, sciatica, sleep apnea, chronic pain, obesity, mass of ovary, kidney stones, carpal tunnel of both wrists, trigger thumb, joint pain, and eye problems.  AR at 102.[2]

On July 9, 2021, Plaintiff filed the instant application for period of disability and disability insurance benefits under Title II of the Social Security Act (the "Act").[3]  AR at 204-10.  After Plaintiff's application was denied initially and on reconsideration, Plaintiff requested a hearing before an ALJ.  *Id*. at 101-14, 116-129.  ALJ Andrew Verne held a telephonic hearing on May 17, 2022, at which Plaintiff appeared with her counsel.  AR at 42-62.  On August 3, 2022, the ALJ issued a written decision denying Plaintiff's claims.  *Id*. at 17-37.  The decision became final when the Appeals Council denied Plaintiff's request for review on April 19, 2023, by operation of 42 U.S.C. § 405(h).  *Id*. at 1-6.

**B.  Summary of ALJ's Findings**

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a)(4).  AR at 18-37.  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability.  *Id*. at 19.

At step two, the ALJ found Plaintiff had the following severe impairments which significantly limited Plaintiff's ability to perform basic work activities:

---

[2]  The Court adopts the parties' pagination of the AR.  All other record citations are to the page numbers generated by the Court's CM/ECF system.

[3]  Plaintiff's April 19, 2019 application was denied following an Administrative Law Judge's ("ALJ") determination that she was not disabled.  *See generally id*. at 84-96.  That decision is not at issue in this action.

> [H]ypertension; tachycardia; obstructive sleep apnea; lower extremity venous insufficiency (with related mild edema); type 1 diabetes mellitus (with peripheral neuropathy); history of bilateral carpal tunnel syndrome (with bilateral surgeries in 2017); disorders of the muscles, ligaments, and fascia (including history of left trigger thumb with related surgery in 2016 and history of bilateral DeQuervain's tenosynovitis with bilateral surgeries in 2018); cervical degenerative disc disease (status post-surgical fusion at C5-6 in 2014); lumbosacral degenerative disc disease; and morbid obesity.

AR at 19-20. The ALJ "subsumed" consideration of Plaintiff's alleged sacroiliitis, polyneuropathy, generalized nerve problems, back injury, sciatica, and lumbar spine arthritis under the evaluation of Plaintiff's other severe impairments. *Id*. at 20, 22.

The ALJ further determined Plaintiff's other alleged physical impairments were either non-severe or not medically determinable.[4] *See* AR at 22. The ALJ concluded Plaintiff's alleged fibromyalgia, "arthritis in the hands," and "inflammation of her ribs" were not medically determinable impairments, noting the lack of a formal diagnosis from any acceptable medical source as to these conditions. *Id*. at 22-23.

Finally, although Plaintiff "made no express allegation of disability due to any mental impairment in any Disability Report," the ALJ noted Plaintiff testified during the hearing regarding "situational stressors in the context of alleged depression." AR at 23. The ALJ concluded "there is no objective medical evidence that the claimant has ever been formally diagnosed by an acceptable medical source with depressive disorder or any other mental impairment," and as a result, Plaintiff "does not have depressive disorder or any other medically determinable mental impairment." *Id*. at 23-24.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. *Id*. at 24.

---

[4] The ALJ found the following impairments non-severe: dyslipidemia, GERD, history of dysphagia, history of nephrolithiasis (kidney stones), left adnexal mass/ovarian cyst, history of right eye tractional retinal detachment, bilateral cataracts, history of lamellar hole in the right eye epiretinal membrane; bilateral proliferative diabetic retinopathy. *See* AR at 22. Plaintiff does not challenge these findings.

Before proceeding to step four, the ALJ determined Plaintiff's RFC, as follows:

> [T]he claimant has the residual functional capacity to perform light work[5] as defined in 20 CFR 404.1567(b) except that: the claimant can lift, carry, push and pull up to 20 pounds occasionally and up to 10 pounds frequently; the claimant can stand and/or walk for 6 hours in an 8-hour workday; the claimant can sit for 6 hours in an 8-hour workday; the claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds; and the claimant can frequently perform handling and fingering bilaterally.

AR at 26.

In making the RFC determination, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as "the medical opinion(s) and prior administrative medical finding(s)." AR at 26. The ALJ considered Plaintiff's subjective symptom testimony at the hearing and found Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms. *Id*. at 27. However, the ALJ further concluded Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id*. In reaching this conclusion, the ALJ considered the objective medical evidence, including objective findings on physical examinations, diagnostic studies, lab testing, and imaging. *See id*. at 28. The ALJ concluded the objective medical evidence supported an RFC of light work, as described above. *Id*.

The ALJ also considered the medical opinions and prior administrative medical findings of State agency physicians G. Spellman, M.D. and T. Do, M.D., both of whom

---

[5]   "Light work" is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," and which "requires a good deal of walking or standing, or . . . involves sitting most of the time with some pushing and pulling of arm or leg controls." *See* 20 C.F.R. § 404.1567(b).

"adopted the residual functional capacity findings of the prior ALJ decision." AR at 32; *see generally id.* at 88-95. Specifically, the ALJ noted Dr. Spellman and Dr. Do "have stated that the claimant is capable of a range of light work, including in sitting for 6 hours in an 8-hour workday and in standing and/or performing all postural activities, but has no manipulative, visual, communicative, or environmental limitations." *Id*. at 32. The ALJ found the State agency physicians' assessment to be "largely persuasive," but determined an "additional restriction to frequent bilateral handling and fingering" was appropriate. *Id*. The ALJ "adopt[ed] the balance of the residual functional capacity findings of that prior ALJ decision under *Chavez [v. Bowen*, 844 F.2d 691 (9th Cir. 1988)]." *Id.* at 33.[6]

The ALJ also discussed medical opinions by Plaintiff's primary care physician, I. Gavrilyuk, M.D., who assessed Plaintiff as severely restricted in her ability to use her hands, as well as various other physical limitations. The ALJ concluded Dr. Gavrilyuk's assessments were "inconsistent with the balance of the evidence" and "globally over-restrictive and non-persuasive." AR at 34. In support of this conclusion, the ALJ stated "Dr. Gavrilyuk's most recent assessment for only 'rarely' handling is substantially inconsistent with his prior opinion (issued less than a month previously) that the claimant is able to perform bilateral handling." *Id*. Additionally, the ALJ concluded that the "cited evidence does not support [Dr. Gavrilyuk's] opinions" regarding Plaintiff's limited capacity for handling due to diagnoses of "fibromyalgia" and "arthritis" because Plaintiff's medical records lack evidence of formal diagnoses of either of these conditions. *Id*. Furthermore, the ALJ stated that "Dr. Gavrilyuk's progress notes are also consistently bereft of reporting of observed abnormalities in the upper extremities, or of observed problems with manipulative function," and that the exams for which the progress notes

---

[6] The ALJ declined to adopt "the prior ALJ's finding that the claimant has no manipulative restrictions . . . ." *Id.* at 32. Plaintiff does not challenge the ALJ's decision to adopt the prior ALJ's findings.

were recorded "otherwise do not support the balance of his severely restrictive assessment regarding reaching, handling, and fingering." *Id*.

At step four, the ALJ concluded that Plaintiff "is able to return to her past relevant work as a budget analyst, both as actually and generally performed" based on her RFC, education and work history. *Id*. Relying on testimony from a vocational expert, the ALJ further determined at step five that "there are other jobs that exists in significant numbers in the national economy that the claimant can also perform." *Id.* at 35. Accordingly, the ALJ concluded Plaintiff was "not disabled" under the Act. AR at 37.

## II.
## ISSUE PRESENTED

Plaintiff raises one issue on appeal: whether the ALJ "properly considered" Dr. Gavrilyuk's medical opinions. Dkt. No. 10 at 5.

## III.
## STANDARD OF REVIEW

The Court's review of the Commissioner's final decision is "highly deferential." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023).[7] The Court "will disturb the denial of benefits only if the decision contains legal error or is not supported by substantial evidence." *Id*. "Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Id*. This Court must review the entire record and consider adverse as well as supporting evidence. *See Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). The Court "may not reweigh the evidence or substitute [its] judgment for that of the ALJ." *Id*. Moreover, "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id*. If the evidence is susceptible of more than one rational interpretation, the ALJ's decision must

---

[7] Unless otherwise noted, internal quotation marks, ellipses, brackets, citations and footnotes are omitted from citations.

be upheld. *See id*. at 1115-16. However, the Court cannot affirm "on a ground upon which [the ALJ] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). Where the ALJ commits legal error, the Court may affirm the decision if the error is harmless, meaning that "it is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

## IV.
## DISCUSSION

**A.     Dr. Gavrilyuk's Medical Opinions**

On March 29, 2022, Dr. Gavrilyuk completed a check-the-box form titled "Physical Capacities Evaluation" (the "March 2022 Opinion"). AR at 690. Dr. Gavrilyuk opined as follows:

- In an eight-hour workday, Plaintiff can sit, stand, or walk for a total of zero hours at one time.

- Dr. Gavrilyuk did not opine on the total number of hours in an eight-hour workday Plaintiff can sit, stand, and walk, but made a handwritten note that Plaintiff "can not sit longer than 10 mins, then having pain in [illegible] back, same with standing and walking."

- Plaintiff can occasionally lift up to five pounds and can never lift between six and 100 pounds.

- Plaintiff can occasionally carry up to five pounds and can never carry between six and 100 pounds.

- Plaintiff can use her right and left hands for repetitive actions such as simple grasping and pushing/pulling arm controls, but she is unable to use either her right or left hand for fine manipulation.

- Plaintiff can use her right, left, or both feet for repetitive movements such as pulling and pushing of foot controls. Dr. Gavrilyuk added a handwritten

note that states "but not for a long time, because [shortness of breath] after few attempts."

- Plaintiff can occasionally reach, but she is not at all able to bend, squat, crawl, or climb.

- Plaintiff "can not do" activities involving unprotected heights; being around moving machinery; exposure to marked changes in temperature/humidity; driving automotive equipment; or exposure to dust, fumes, or gases.

- In response to an inquiry about whether Plaintiff requires a mobility scooter, Dr. Gavrilyuk circled "yes."

AR at 690.

On April 25, 2022, Dr. Gavrilyuk completed a different, untitled functional assessment form (the "April 2022 Opinion"). AR at 692. Dr. Gavrilyuk attached his complete responses to the form on a separate typewritten page and opined as follows:

- Plaintiff's medical diagnoses include Diabetes Type 1; Diabetic Peripheral Neuropathy; Polyneuropathy; Chronic Sciatica; Fibromyalgia; and Osteoarthritis.

- In response to the question of whether this condition causes pain, Dr. Gavrilyuk wrote "yes, constantly." Dr. Gavrilyuk did not identify which condition(s) cause constant pain.

- In response to the question of whether this condition causes limited functioning in the use of Plaintiff's upper extremities, Dr. Gavrilyuk wrote "yes, constantly." Dr. Gavrilyuk did not identify which condition(s) cause limited functioning in the use of Plaintiff's upper extremities.

- Plaintiff can engage in fine manipulative activities (fingering, typing, writing, etc.) using her right and left hands "[r]arely and not for any extended amount of time," and "must rest frequently to relieve pain."

- Plaintiff can engage in gross manipulative activities (handling, grasping, etc.) using her right and left hands "[r]arely and not for any extended amount of time. Patient must rest frequently to relieve pain."

- Plaintiff can engage in pushing/pulling activities as follows: "For right and left- rarely and not for any extended period of time."

- Plaintiff can engage in pushing/pulling activities in all directions as follows: "For right and left- rarely and not for any extended period of time."

- Plaintiff can engage in overhead work as follows: "Rarely and not for any extended period of time."

- Plaintiff can lift weight as follows: "right: 2-4 pounds. Left 2-4 lbs. 5 lbs total max."

*Id.* at 693. On the same untitled functional assessment form, Dr. Gavrilyuk further described Plaintiff's alleged functional limitations, as follows:

> Due to Diabetic Peripheral Neuropathy and Polyneuropathy, the patient experiences frequent to constant pain and numbness in her hands and feet which limits her ability to write, type, reach, and/or grasp with her hands as well as limits her ability to walk or stand for any extended period of time. The patient requires several rest periods throughout the day in order to manage her diabetes and for pain management. The patient also needs to lie down throughout the day.
>
> The patient also suffers from Chronic Sciatica which causes severe constant pain in her lower back, hips, and legs. This makes it very difficult for the patient to walk short distances and she is not able to sit nor stand for long periods of time.
>
> The patient also has arthritis in her hands, wrists, neck, shoulders, hips, and spine. This causes constant pain and discomfort which limits her ability to write, type, reach, and/or grasp.
>
> Due to the conditions noted above, the patient is limited in her ability to perform the simplest of tasks including dressing, showering, putting on socks and shoes, fixing meals, household chores, etc.

*Id.*

**B.     The ALJ Properly Assessed Dr. Gavrilyuk's Opinions**

Plaintiff contends the ALJ "failed to properly consider Dr. Gavrilyuk's medical opinions." Dkt. No. 10 at 13. Plaintiff specifically complains the reasons the ALJ gave for finding Dr. Gavrilyuk's opinion regarding Plaintiff's manipulative limitations unpersuasive were not "legally sufficient." *See id.* at 6, 13. Plaintiff further asserts that

even if it was not error for the ALJ to reject Dr. Gavrilyuk's recommended manipulative limitations, the ALJ nevertheless erred in "rejecting the remaining portions" of Dr. Gavrilyuk's opinion. *Id.* at 13. The Court disagrees.

It is well established in this Circuit that the ALJ "need not take every medical opinion at face value." *Cross v. O'Malley*, 89 F.4th 1211, 1213 (9th Cir. 2024). "Rather, the ALJ must scrutinize the various – often conflicting – medical opinions to determine how much weight to afford each opinion." *Id.* at 1213-14. The "most important factors" the ALJ must consider in doing so are supportability and consistency. 20 C.F.R. § 404.1520c(a). "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[] . . . the more persuasive the medical opinion[] . . . will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(c)(2)). "The more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." 20 C.F.R. § 404.1520c(c)(2). Although the regulations identify other factors which may bear on an opinion's persuasive value, the ALJ "generally has no obligation" to discuss these factors. *Cross*, 89 F.4th at 1214.

    *1. Manipulative Limitations*

Regarding the manipulative limitations recommended by Dr. Gavrilyuk, the ALJ observed Dr. Gavrilyuk assessed Plaintiff in March 2022 as "able to use her hands for repetitive actions such as simple grasping (i.e., handling) and pushing and pulling, [but not] fine manipulation (i.e., fingering)." AR at 34 (citing *id.* at 690). Yet, less than one month later, on April 25, 2022, Dr. Gavrilyuk "authored a letter in which he newly stated that the claimant can only 'rarely' engage in handling bilaterally," further adding Plaintiff "can

only rarely finger, push/pull, and engage in 'overhead work.'" *Id*. (citing *id.* at 692-93). Based on these assessments, the ALJ found Dr. Gavrilyuk's later assessment restricting Plaintiff to "'rarely' handling is substantially inconsistent with his prior opinion . . . that the claimant is able to perform bilateral handling." *Id*. The internal inconsistency between Dr. Gavrilyuk's two opinions is a sufficient basis to reject them. 20 C.F.R. § 404.1520c(c)(2); *see also Ford v. Saul*, 950 F.3d at 1141, 1154 (9th Cir. 2020) (finding no error where ALJ rejected treating provider's opinion as "inconsistent with medical evidence, including previous medical opinions contained in his own notes").

Plaintiff contends Dr. Gavrilyuk's two opinions are not actually inconsistent, asserting there is a difference between "simple grasping" (of which Plaintiff was capable per the March 2022 Opinion) and "gross manipulative activities (handling, grasping, etc.)" (of which Plaintiff was not capable per the April 2022 Opinion). *See* Dkt. No. 10 at 8. But the ALJ's finding that the two opinions were "substantially inconsistent" (AR at 34) suggests the ALJ did not perceive a meaningful difference between these activities, and the Court cannot say on this record that the ALJ's interpretation was not rational. *See Ahearn*, 988 F.3d at 1115-16 (where evidence is susceptible of more than one rational interpretation, "the court must uphold the [ALJ's] decision").

Moreover, the ALJ rejected *both* opinions as "globally over-restrictive and non-persuasive," citing other evidence in the record which undermined the purported need for manipulative limitations. AR at 34. For example, the ALJ noted the dearth of supportive clinical findings from Dr. Gavrilyuk's own treatment records, stating "Dr. Gavrilyuk's progress notes are also consistently bereft of reporting of observed abnormalities in the upper extremities, or of observed problems with manipulative function." *Id.* at 34. The ALJ found Dr. Gavrilyuk's progress notes from medical examinations on July 12, 2021, August 16, 2021, November 5, 2021, and November 22, 2021, which uniformly lacked reference to or diagnoses of fibromyalgia, arthritis of the hands or wrists, abnormalities of the upper extremities, or problems with manipulative function, "actually support[ed] [the] initial opinion (in March of 2022) that the claimant is able to perform bilateral handling,"

and "[did] not support the balance of his severely restrictive assessments regarding reaching, handling, and fingering." *Id*. (citing *id*. at 527, 613, 619, 625). Plaintiff admits that "Dr. Gavrilyuk's examinations lacked documentation of manipulative abnormalities." Dkt. No. 10 at 12. A medical opinion is properly found unpersuasive where the provider assesses limitations that are "contradicted [by] his own treatment records." *Stiffler v. O'Malley*, 102 F.4th 1102, 1107 (9th Cir. 2024); *see also Jeanette R. v. Kijakazi*, 620 F. Supp. 3d 1127, 1143 (E.D. Wash. 2022) (noting the ALJ "is not obliged to credit medical opinions that are unsupported by the medical source's own data . . .").

The ALJ also found Dr. Gavrilyuk's recommended manipulative limitations were "inconsistent with the balance of the evidence" in the record, incorporating by reference the analysis "previously detailed in evaluating the administrative medical findings of Dr. Spellman and Dr. Do." AR at 34. The ALJ's evaluation of those prior administrative medical findings, in turn, was premised on a review of the record evidence that supported a limitation to light work "with an additional restriction to frequent bilateral handling" in view of Plaintiff's documented complaints of upper-extremity paresthesias in a "'glove' distribution." *Id*. at 32. Ultimately, the ALJ determined Plaintiff's impairments did not prevent her from working altogether but incorporated manipulative limitations to the extent those limitations were supported by the record in formulating the RFC.

It is worth noting that Dr. Gavrilyuk's opinion that Plaintiff could only rarely engage in manipulative activities paralleled Plaintiff's own testimony that she was unable to type, use a mouse and similar activities because of the pain in her hands. *Id*. at 49. Based on a thorough review of the medical records regarding Plaintiff's upper-extremity impairments, the ALJ found "there is no persuasive evidence of substantial upper extremity limitations, including manipulative limitations." *Id*. at 28. In particular, the ALJ identified that while Plaintiff endorsed stiffness, swelling and parasthesias in her upper extremities "on sporadic occasion," she generally presented without these complaints. *Id*. Physical examinations demonstrated normal motor strength, intact sensation, and no neurologic deficits. *Id*. at 29. Referencing Dr. Gavrilyuk's opinion letter, the ALJ noted there were no findings in the

record, including Dr. Gavrilyuk's progress notes, of "abnormalities in the neck, shoulders or hands." *Id.* Records from Plaintiff's rheumatologist documented Plaintiff's generalized complaint of "pain" but "no reported reference to symptomatic hand problems (including manipulative problems)" and no objective findings of swelling in the hands or wrists. *Id.* at 30. The ALJ also referenced Plaintiff's testimony at the hearing that she drives and uses a motorized scooter, both of which "required significant sitting, reaching, and handling," and "[d]riving additionally requiring significant use of foot controls." AR at 33. Additionally, the ALJ noted that although Plaintiff has a history of diabetes "with related neuropathy/polyneuropathy," as well as bilateral carpal tunnel syndrome, bilateral DeQuervain's tenosynovitis, and left trigger thumb, these conditions manifested "well prior to the alleged onset date of disability," yet Plaintiff was able to engage in substantial gainful activity throughout 2017 and 2018. AR at 28.

In sum, the ALJ found Dr. Gavrilyuk's opinions regarding Plaintiff's manipulative limitations were not persuasive because they were not "consistent with the evidence from other medical sources and nonmedical sources in the claim," 20 C.F.R. § 404.1520c(c)(2), including Dr. Gavrilyuk's treatment notes, records from other providers, and Plaintiff's self-reported daily activities and history of substantial gainful employment despite her impairments. This was not error. *See Stiffler*, 102 F.4th at 1107 (finding ALJ did not err in rejecting "extreme limitations" that were contradicted by objective medical evidence and claimant's activity level); *see also Coleman v. Saul*, 979 F.3d 751, 757 (9th Cir. 2020) (finding "the ALJ provided legally sufficient reasons" to reject medical opinion where "the full medical record cast[] doubt on the limitations assessed.").

Finally, the Court is not persuaded by Plaintiff's contention that the ALJ erroneously understood Dr. Gavrilyuk's proposed manipulative limitations to be necessitated by "fibromyalgia" and "arthritis." Dkt. No. 10 at 9 (citing AR at 34). Seemingly conceding the truth of the ALJ's observation that there is "no evidence" in the record of a "formal diagnosis" of fibromyalgia (AR at 34) Plaintiff nevertheless charges the ALJ erred because Dr. Gavrilyuk's opinion regarding manipulation was based "first" on Plaintiff's well-

documented diabetic peripheral neuropathy with polyneuropathy and only secondarily to Plaintiff's sciatica and arthritis. Dkt. No. 10 at 9-10. Plaintiff further asserts "[o]ther than citing Fibromyalgia as a diagnosis, Dr. Gavrilyuk did not cite to or rely on that diagnosis for the restrictions assessed" in his April 2022 medical opinion. *Id.* at 9. Having carefully reviewed Dr. Gavrilyuk's April 2022 medical opinion and the ALJ's decision, the Court finds Plaintiff's argument misplaced. Dr. Gavrilyuk does not disclaim that fibromyalgia is relevant to his April 2022 Opinion. AR at 692-93. The ALJ did not link Plaintiff's fibromyalgia diagnosis (or lack thereof) to the recommended manipulative limitations when identifying the reasons why Dr. Gavrilyuk's opinions were "globally over-restrictive." *Id.* at 34. For the same reason, the Court also does not find the ALJ's purported failure to appreciate that arthritis "was not the first medical condition to which Dr. Gavrilyuk tethered the manipulative restrictions he assessed" (Dkt. No. 10 at 10) was reversible error, particularly in light of the multiple other, sufficient bases the ALJ articulated for finding those opinions inconsistent with, and unsupported by, the other evidence in the record.

## 2. Other Limitations

Although Plaintiff's brief largely focuses on the ALJ's rejection of Dr. Gavrilyuk's recommended manipulative limitations, she briefly asserts the ALJ also improperly rejected Dr. Gavrilyuk's non-manipulative limitations "attributed to chronic sciatica and diabetic peripheral neuropathy and polyneuropathy," including that she could "neither sit nor stand for long periods, had to rest several periods throughout the day, and had to lie down throughout the day." Dkt. No. 10 at 13.

As stated above, the ALJ's rejection of Dr. Gavrilyuk's opinions incorporated by reference his evaluation of Drs. Spellman's and Do's opinions and followed a lengthy discussion of Plaintiff's subjective allegations regarding her limitations, which Dr. Gavrilyuk's opinions largely mirror. *See* AR at 28-33. Specifically with regard to Plaintiff's alleged difficulties sitting and walking and Dr. Gavrilyuk's opinion that Plaintiff "needs to lie down throughout the day," the ALJ noted there was no documentation in the

record regarding "lying down," either as a "treatment modality" or an action undertaken by Plaintiff "to alleviate [her] impairment symptoms." *Id.* at 32. The ALJ further observed results of imaging studies of Plaintiff's cervical and lumbar spine, neck, sacroiliac joints, hips, right knee, and right ankle demonstrated benign or mild findings and "fit the profile" of an individual capable of light work. *Id.* at 28. Although physical examinations "occasionally" revealed tenderness, swelling or stiffness in her spine, hip and extremities, Plaintiff generally was found to have normal range of motion, intact sensation, normal gait and full motor strength, without evidence of edema, clubbing or cyanosis in her extremities. *Id.* at 29-31. Neurologic and musculoskeletal tests were negative, as was Plaintiff's "cardiac work up." *Id.* at 31. Plaintiff reported "80% improvement" in her pain symptoms from trigger point injections. *Id.* at 30.

The ALJ considered all of the foregoing medical evidence as undermining the allegation that Plaintiff's impairments prevented her from sitting, standing, or walking, and instead supported the above-described RFC. *Id.* at 30-31. The ALJ was not required to reiterate this thorough and detailed analysis of the record in pronouncing Dr. Gavrilyuk's opinion "inconsistent with the balance of the evidence." AR at 34. The ALJ need not "draft [a] dissertation[]" when adjudicating an application for benefits, particularly where, as here, the ALJ has "fairly summarized the longitudinal medical records," and the "rationale for the ALJ's decision is clear." *Ovando v. Comm'r of Soc. Sec.*, No. 1:21-CV-00030-SAB, 2022 WL 2974654, at *17 (E.D. Cal. July 27, 2022) (citing *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020)). Accordingly, the Court is not persuaded that "the record does not answer" whether Plaintiff is disabled, and is equally unpersuaded that the matter requires remand for further consideration of Dr. Gavrilyuk's opinion. *See* Dkt. No. 10 at 13.

C. **The ALJ's Decision is Supported by Substantial Evidence**

The Court has independently "assess[ed] the entire record, weighing the evidence both supporting and detracting from the [ALJ's] conclusion." *See Ahearn*, 988 F.3d at 1115. The Court concludes substantial evidence supports the ALJ's determination that Dr.

Gavrilyuk's opinions are inadequately supported and not consistent with the other medical and nonmedical evidence in the record. *Id*. Furthermore, substantial evidence supports the ALJ's conclusion that the evidence is most consistent with the residual functional capacity for a range of light work, with additional manipulative limitations as described above. A summary of such evidence follows.

The record confirms, by testing or by history, Plaintiff's severe impairments of hypertension, tachycardia, obstructive sleep apnea, venous insufficiency, type 1 diabetes, carpal tunnel syndrome, other disorders of the muscles, ligaments and fascia, degenerative disc disease in the cervical and lumbosacral spine, and morbid obesity. *See*, *e.g.*, AR at 303, 321-22, 345, 358, 359, 377, 521, 537, 569, 670.

Regarding Plaintiff's musculoskeletal impairments, however, imaging studies were negative or showed only mild or minimal disease in her spine, neck, right hip, right knee, and right ankle. *See*, *e.g.*, AR at 355, 524-26, 573, 601, 633, 634, 688-89. There is no indication in the record of any diagnosis of arthritis in the hands, wrists, hips or shoulders, or of inflammatory (rheumatoid) arthritis. AR at 632, 681. Although Dr. Gavrilyuk's notes indicate she was referred to a neurologist in 2019 to rule out fibromyalgia, there is no indication Plaintiff was ever diagnosed with the condition. AR at 525. In March 2022, Plaintiff reported she had been seen by a rheumatologist "within the last year due to diffuse joint pain and was told she just has OA [*i.e.*, osteoarthritis], not rheumatoid arthritis or other rheumatological condition." *Id.* at 681.

Upper-extremity findings, including from physical examinations performed by Dr. Gavrilyuk, were largely negative for clubbing, cyanosis, edema, or neurological deficits, and demonstrated full motor strength, intact sensation, and normal gait and posture. *See id*. at 322, 524-28, 529-33, 542, 590-91, 678-80, 700-01. Dr. Gavrilyuk recommended physical therapy and pain medications to address Plaintiff's complaints. *Id*. at 524. Notes from a rheumatology consult in May 2021 indicate "subjective" reports of swelling which were "not appreciable" by the examiner. AR at 591. The record also confirms Plaintiff uses a motorized scooter, although there is no evidence its use has been prescribed by any

medical provider other than Plaintiff's hearing testimony that Dr. Gavrilyuk might have indicated on a form she would "benefit" from its use. AR at 51-52. Dr. Gavrilyuk's records contain notations that Plaintiff "has been using motorized scooter in the community" but was "ambulatory at home." AR at 524, 534. Reports of several eye examinations confirm that Plaintiff continued to drive despite alleged difficulty using her hands. AR at 406, 419, 467, 498, 504.

The record confirms Plaintiff's morbid obesity and tachycardia. *See* AR at 359, 597, 699. Nevertheless, cardiovascular findings were largely normal. AR at 322, 528, 532, 539, 558. Progress notes from Plaintiff's cardiologist indicate Plaintiff had no cardiac disease and a "negative cardiac work up," and he considered her tachycardia a "benign finding." AR at 377, 380, 383, 388. The cardiologist also noted Plaintiff's hypertension was treated with medication and that she denied chest pain, dizziness, palpitations and shortness of breath. *See id.* at 378, 381, 384, 388, 595. Findings on a September 2021 chest CT were normal. *Id.* at 635-36. An electrocardiogram performed in November 2021 confirmed sinus tachycardia but was "otherwise normal." *Id.* at 670.

Dr. Spellman concluded upon initial review that Plaintiff was capable of engaging in light work, noting Plaintiff was previously determined to be "not disabled" and opining the evidence did not support a finding of increased impairment. *See* AR at 101-14. On reconsideration, Dr. Do likewise concluded a "light" RFC was appropriate because there was no demonstrated worsening of Plaintiff's symptoms. *Id.* at 116-29.

The Court finds the foregoing is substantial evidence to support the ALJ's factual findings. Accordingly, the ALJ's decision will not be disturbed. *See Ahearn*, 988 F.3d at 1115 ("If substantial evidence in the record supports the ALJ's decision we must defer to the ALJ."); *see also* 42 U.S.C.A. § 405(g) (providing that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

/ / /

/ / /

# V.

# CONCLUSION

The Court concludes the ALJ's decision is free of legal error and is supported by substantial evidence, and accordingly **AFFIRMS** the final decision of the Commissioner of Social Security. The Clerk of Court is respectfully requested to enter judgment accordingly and terminate the case.

**IT IS SO ORDERED.**

Dated: September 24, 2024

_____
Hon. David D. Leshner
United States Magistrate Judge